IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| O'REILLY AUTOMOTIVE STORES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-3102-CV-S-BP |
| | ) | |
| BEARING TECHNOLOGIES, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION GRANTING PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT AND
## GRANTING PLAINTIFF SUMMARY JUDGMENT ON COUNTERCLAIM EIGHT

O'Reilly Automotive Stores, Inc., ("Plaintiff"), filed suit against Bearing Technologies, Limited, ("Defendant"), asserting claims under the Lanham Act and similar state laws. Defendant responded with similar counterclaims. Plaintiff has filed a Motion for Partial Summary Judgment, (Doc. 383), seeking summary judgment on Counterclaim Eight. As set forth below, Plaintiff's motion is **GRANTED**.

## I. BACKGROUND

This case involves the use of the word "Precision" to describe certain auto parts, as well as the use of particular marks or logos using that word. In 1965, Precision Universal Joint Corporation registered a trademark in the word "Precision" in connection with universal joints (or "u-joints"). At some point in time, Federal-Mogul acquired this trademark and continued using it to brand its u-joints. In 2010, Federal-Mogul decided to phase out its Precision brand and offered to sell it to Plaintiff. As Plaintiff's counsel explained during oral argument relating to different motions, Plaintiff

> expressed interest in acquiring the mark from Federal-Mogul for use as one of [its] private label or house brands, and the parties had a discussion as to whether the

> brand could also be used on wheel hubs that Federal-Mogul was, at that time, supplying to [Plaintiff under] a different brand. [Plaintiff] made it clear to Federal-Mogul that it was only interested in owning the Precision trademark if the uses were protected by federal trademark registrations.

(Doc. 337, p. 8.)[1]

In March 2010, Federal-Mogul advised Plaintiff that its Precision mark could be used on wheel hub assemblies. In that same month, Federal-Mogul applied with the Patent and Trademark Office, ("PTO" or "USPTO"), for registration of the word marks "Precision" and "Precision Hub Assemblies." In October 2010, Defendant filed its own application to register a mark using the word "Precision," but the PTO advised Defendant that Federal-Mogul's application had priority and Defendant suspended its application. On May 31, 2011, the PTO issued registrations to Federal-Mogul, and Federal-Mogul transferred ownership in the marks to Plaintiff in November 2011.

In December 2015, Defendant filed a Petition for Cancellation with the Trademark Trial and Appeal Board, ("TTAB"), thereby initiating a process of *inter partes* review of the registrations issued to Federal-Mogul and now owned by Plaintiff. At the same time, Plaintiff filed another application to register its mark. Plaintiff filed this lawsuit in March 2016, then asked the TTAB to stay its proceedings until this lawsuit was concluded. The TTAB granted Plaintiff's request.

The subsequent relevant facts require reference to some of the laws governing trademarks. By statute, the owner of a trademark is required to file an affidavit (sometimes referred to as a "Declaration of Use") containing specified information with the PTO between five and six years after the registration is granted. 15 U.S.C. §§ 1058(a)(1), 1058(b). This is commonly referred to

---

[1] All page numbers are those generated by the Court's CM/ECF system.

as a "Section 8 filing." In addition, in that same time period, the trademark's owner may – but is not required to – file a "Declaration of Incontestability". *Id.* § 1065. This is commonly referred to as a "Section 15 filing." An incontestable mark is conclusively valid and is subject to certain defenses specified by Congress. *See id.* § 1115(b). As will be discussed below, however, a Section 15 filing is a prerequisite to making a registration incontestable, but the PTO does not determine whether a registration is incontestable. Among the representations that must be made in a Section 15 filing is a declaration that "there is no proceeding involving" the trademark's validity "pending in the [PTO] or in a court and not finally disposed of." *Id.* § 1065(2). A trademark owner may elect to file a combined Section 8 and Section 15 filing; in fact, such an occurrence is so common that the PTO has a form that combines both filings.[2]

Thus, pursuant to § 1058, Plaintiff was required to submit Section 8 filings between May 31, 2016 and May 31, 2017. Eugene Han, Senior Legal Counsel for Plaintiff, attended to this task in February 2017. However, instead of submitting Section 8 filings, he submitted combined Section 8 and Section 15 filings – even though Section 15 filings should not have been made because there were proceedings contesting Plaintiff's mark in both the PTO and this Court. And, there is no dispute that Han knew about the proceedings in the PTO and this Court. He testified at his deposition that the combined Section 8 and Section 15 filings were the product of inadvertence, prompted by the fact that in the vast majority of cases he submits a combined Section 8 and Section 15 filing.

On April 18, 2017, The PTO issued a combined "Notice of Acceptance Under Section 8 and "Notice of Acknowledgment Under Section 15." (Doc. 385-12.) On September 25, 2017, Defendant sought leave to add Counterclaim Eight, which characterizes Han's filing as a fraud on

---

[2] https://www.uspto.gov/sites/default/files/documents/8_and_15.pdf and https://teas.uspto.gov/postreg/s08n15 (both links last visited August 30, 2015).

3

the PTO and seeks an order canceling Plaintiff's registrations pursuant to 15 U.S.C. § 1064. Han learned of Counterclaim Eight the day it was filed, and later that day he filed Petitions with the PTO declaring that the Section 15 filings should be abandoned. (Doc. 385-13; Doc. 385-14.) One week later, the PTO granted the Petitions. The PTO's response states, in part, that it would "abandon the Section 15 affidavit and update the registration record accordingly. Petitioner's Section 15 affidavit, however, will still remain of record." (Doc. 385-15; Doc 385-16.)

Plaintiff seeks summary judgment on four grounds: (1) there is no evidence that Plaintiff knew of Han's false statements to the PTO, (2) there is no evidence that Han acted with the intent to defraud the PTO, (3) the Record establishes that the PTO did not rely on the false statement, and (4) there is no evidence that Defendant was injured. Defendant disputes these arguments. As discussed below, the Court agrees that the Record demonstrates that the PTO did not rely on Han's false statement and that Defendant was not injured, making it unnecessary to consider Plaintiff's other arguments.[3]

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986).

---

[3] The Court rejects Defendant's argument that Plaintiff's Motion for Partial Summary Judgment should be denied as untimely. (Doc. 390, p. 30 n.2.) Defendant was granted leave to add Counterclaim Eight in March 2018, (Doc. 334) – well after the February 8, 2017 deadline for amending the pleadings. (Doc. 54, ¶ 4.) In fact, Counterclaim Eight was filed after the deadlines for both (1) completing discovery and (2) filing dispositive motions. (*See* Doc. 138.) The Honorable Matt J. Whitworth – the judge to whom the case was assigned at the time – did not set deadlines for discovery or filing dispositive motions, yet he later made clear that he anticipated that discovery would be conducted. (*E.g.,* Doc. 373, p. 7.) Thus, the lack of a schedule for events that would normally occur during litigation appears to have been an oversight and not an indication that discovery and dispositive motions would not be allowed. Accordingly, and in light of Rule 1's directive to apply the rules in a manner that "secure[s] the just, speedy, and inexpensive determination of every action and proceeding," the Court deems it appropriate to determine whether summary judgment is appropriate on this claim instead of simply requiring the parties to undergo the effort of submitting it to a jury.

"[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). A party opposing a motion for summary judgment may not rest on mere allegations or pleading denials, but must point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

A party can also seek summary judgment by demonstrating that the Record lacks evidence of certain facts that are necessary to support the proponent's claim. "[I]f the nonmoving party must prove *X* to prevail, the moving party at summary judgment can either produce evidence that *X* is not so or point out that the nonmoving party lacks the evidence to prove *X*." *Bedford v. Doe,* 880 F.3d 993, 996-97 (8th Cir. 2018) (citation omitted); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323-23, 25 (1986); *St. Jude Med., Inc. v. Lifecare Int'l, Inc.,* 250 F.3d 587, 596 (8th Cir. 2001). "A complete failure by the non-moving party 'to make a showing sufficient to establish the existence of an element essential to that party's case . . . necessarily renders all other facts immaterial.'" *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.,* 732 F.3d 882, 886 (8th Cir. 2013) (quoting *Celotex Corp.,* 477 U.S. at 322-23); *see also Blake v. JM Optical, Inc.,* 870 F.3d 820, 825 (8th Cir. 2017).

## A. Reliance by the PTO

Counterclaim 8 seeks cancellation of Plaintiff's trademarks pursuant to 15 U.S.C. § 1064, which allows a party to seek cancellation of a mark if "its registration was obtained fraudulently or contrary to" various statutory provisions. Fraud on the PTO within the meaning of § 1064 exists if (1) there was a false representation regarding a material fact, (2) the registrant knew or believed that the representation was false, (3) the registrant intended to induce the PTO to act or refrain from acting based on the misrepresentation, (4) the PTO reasonably relied on the misrepresentation, and (5) injury proximately resulted from such reliance. *E.g., Patsy's Italian Rest., Inc. v. Banas,* 658 F.3d 254, 270-71 (2d Cir. 2011); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.,* 951 F.2d 684, 693 n.14 (5th Cir. 1992); *Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1444 (9th Cir. 1990) (citing *San Juan Prod., Inc. v. San Juan Pools of Kansas, Inc.,* 849 F.2d 468, 473 (10th Cir. 1988)); *see also McCarthy on Trademarks and Unfair Competition,* § 31:61 & n.1. (5th ed. 2018) (hereafter "McCarthy"). For the sake of discussion, the Court will assume that the first three requirements can be satisfied. However, the Record demonstrates that the PTO did not rely on Han's misrepresentation.

The Section 15 filings did not result in the registrations at issue. The Section 15 filings resulted in the PTO issuing an acknowledgment that it received the Section 15 filings, but nothing more. As the PTO's Trademark Manual of Examining Procedure, ("TMEP"), explains, the PTO "does not 'accept' §15 affidavits or declarations. . . . Rather, the USPTO reviews the affidavit or declaration to determine whether it is consistent with the requirements of the statute and rules (e.g., whether it is signed, whether it was filed at an appropriate time, and whether the §15 claims are properly set forth)." TMEP, § 1605; *see also Arman's Sys., Inc. v. Armand's Subway, Inc.,* 215 U.S.P.Q. (BNA) ¶ 1048 (T.T.A.B. Aug. 31, 1982) (noting distinction between "accepting" a filing

and the ministerial act of acknowledging receipt of a Section 15 filing); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.,* 247 F. Supp. 3d 76, 104 (D.D.C. 2017) (citing *Arman's Sys.*). And, there is no legal effect arising from the PTO's acknowledgment of receipt; it only serves as notice that the filing was received. "Acknowledging receipt of the affidavit or declaration provides notice to the public that an affidavit or declaration of incontestability has been filed; it is not a determination by the USPTO that the registration is in fact incontestable. The question of whether the registration is incontestable arises and is determined by a court if there is a proceeding involving the mark." TMEP, § 1605.

The limited effect of the PTO's acknowledgment demonstrates that the PTO did not rely on the Section 15 filings in the manner required to support cancellation under § 1064. The PTO itself states that it takes no official action based on a Section 15 filings, and Defendant has not identified any action the PTO has taken based on the Section 15 filings. Defendant points out that the Section 15 filing remains part of the official record, but Defendant does not explain how this constitutes official action by the PTO taken in reliance on the Section 15 filings. The only action taken by the PTO remains its acknowledgment that Defendant submitted the Section 15 filings, which as explained above only means that the Section 15 filings were received. Moreover, the official record includes (1) Plaintiff's abandonment of the Section 15 filings and (2) the PTO's approval of that abandonment.[4] Accordingly, Defendant cannot establish that the PTO relied on the Section 15 filings.[5]

---

[4] Defendant argues that "a party's later attempts to remedy fraud cannot negate the USPTO's reliance on the party's declarations." (Doc. 390, p. 40.) Accepting this as true, here there was no reliance to be negated.

[5] The Court also notes that the PTO was fully aware of the fact that there was a pending proceeding challenging the registrations' validity because one of those proceedings was pending in the TTAB. This undercuts Defendant's contention that the PTO was somehow misled by the Section 15 filing. (*See, e.g.,* Doc. 385-7; Doc. 385-8.)

## B. Injury

With respect to the injury requirement, a party seeking cancellation need not allege pecuniary damage; it is sufficient if the party suffered an injury sufficient to give it standing to seek cancellation. *See* McCarthy § 31.61.[6] The Court concludes that Defendant has not suffered such an injury.

Plaintiff argues that the requirement cannot be satisfied by the legal fees Defendant incurred pursuing cancellation, and that Defendant suffered no other injuries as a result of the Section 15 filings between the time they were submitted and the time they were abandoned. (Doc. 384, pp. 18-23.) Defendant does not rely on the legal fees incurred pursuing cancellation, nor does it specify any injuries it suffered between April 2017 and October 2017 as a result of the Section 15 filings. Instead, Defendant contends that it has been injured because Plaintiff "continues to assert the Registrations against [Defendant], and consequently, [Defendant] has been forced to defend itself (an injury in fact caused by [Plaintiff's] bringing suit that will be redressed by a favorable decision in this case)." (Doc. 390, p. 42.) The injury Defendant has specified is insufficient to support its request for cancellation.

Han's misrepresentations did not lead to the trademarks being registered; they were already registered when he filed the Section 15 filings. And, the Section 15 filings did not continue their

---

[6] Defendant suggests that the Eighth Circuit does not require a party seeking cancellation to demonstrate that it suffered damage. (Doc. 390, p. 36.) At the same time, Defendant contends that even if damages are required, "the only 'damages' a party is required to suffer are damages sufficient for standing to seek cancellation based on fraud." (*Id.*) The cases Defendant cites for the proposition that no showing of damage or injury is required are inapplicable because they do not purport to describe the requirements for seeking cancellation under § 1064; at most, they discuss the instructions given to, or findings made by, the jury. *E.g., Fair Isaac Corp. v. Experian Info. Sols., Inc.,* 650 F.3d 1139, 1148 (8th Cir. 2011); *B&B Hardware, Inc. v. Hargis Indus., Inc.,* 2017 WL 957548, at *2 (E.D. Ark. 2017) (appeal pending). This is not surprising, given that the objective of a § 1064 proceeding is cancellation of a registration and not the recovery of monetary damages, and the issue of whether a party has standing is typically made by the court. Moreover, § 1064 itself states that a request to cancel may be made "by any person who believes that he is or will be damaged" and thus requires a showing of injury. Accordingly, and in light of the weight of authority cited in the text, the Court concludes that a party seeking cancellation of a registration under § 1064 must have been injured by the false representation to the PTO.

registered status; that was accomplished with the Section 8 filings, which are not at issue. With or without the Section 15 filings, Plaintiff would have "assert[ed] the Registrations against" Defendant, and Defendant would have been forced to defend against those assertions.[7] Therefore, the alleged fraud on the PTO did not cause the injury Defendant has identified.

The fact that the injury Defendant complains of was caused by the registrations and not by the Section 15 filing is significant for another reason as well. As stated earlier, § 1064 permits a party to seek cancellation of a "registration [that] was obtained fraudulently . . . ." 15 U.S.C. § 1064(3). Counterclaim Eight does not allege that the registrations were obtained fraudulently; Counterclaim Eight alleges that the Section 15 filings were fraudulent, but § 1064 does not state that a registration can be canceled because of a fraudulent Section 15 filing. Congress set forth a different remedy for a fraudulent Section 15 filing; if a mark's owner asserts that the registration is incontestable, one of the available grounds for opposing the assertion is "[t]hat the . . . incontestable right to use the mark was obtained fraudulently." 15 U.S.C. § 1115(b)(1). This is consistent with the PTO's declaration that "[t]he question of whether the registration is incontestable arises and is determined by a court if there is a proceeding involving the mark." TMEP, § 1605. Thus, while Congress allows a party to seek cancellation of a registration if the registration was obtained through fraud on the PTO, Congress did not allow a party seek cancellation of a registration because a Section 15 filing was submitted fraudulently. As a leading commentator has opined,

> [F]raud in a Section 15 incontestability affidavit or declaration should only serve to eliminate the incontestable status of the registration and not result in cancellation of the registration itself. If a "defect" is proven, the registration itself is not destroyed. . . . While Section 8 and renewals go to the continuance of the registration itself, Section 15 does not.

---

[7] The Court notes that in the course of this litigation Plaintiff has never asserted that its registrations are incontestable.

9

McCarthy, § 31:81 (footnote omitted).

Defendant was not injured by the allegedly fraudulent Section 15 filing because it did not cause Defendant to defend this lawsuit or support any issue initially raised by Plaintiff within this lawsuit. And, if Plaintiff had asserted that its registrations were incontestable, Defendant could have utilized the remedy provided by Congress. Therefore, Defendant was not "damaged" in the manner required to seek cancellation under § 1064.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is **GRANTED** and Plaintiff is granted summary judgment on Counterclaim Eight.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: September 10, 2018　　　　　　　　　　UNITED STATES DISTRICT COURT