## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| O'REILLY AUTOMOTIVE STORES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-3102-CV-S-BP |
| | ) | |
| BEARING TECHNOLOGIES, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION GRANTING IN PART AND DEFERRING IN PART DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

O'Reilly Automotive Stores, Inc., ("Plaintiff"), filed suit against Bearing Technologies, Limited, ("Defendant"), asserting claims under the Lanham Act and similar state laws. Defendant responded with similar counterclaims. In two separate Orders the Court granted summary judgment on many of the parties' claims. (Doc. 411, Doc. 429.) Defendant then filed a Motion to Dismiss, contending that in light of the Court's rulings, it lacks jurisdiction over the remaining claims. Plaintiff opposes dismissal. Upon considering the parties' arguments, the Court grants the motion in part and defers it in part.

## I. BACKGROUND

The Court's prior Orders provide greater detail about the background to this case. (*See* Doc. 411, pp. 1-4; Doc. 429, pp. 1-6.) In summary, this lawsuit involves the use of the word "Precision" to describe certain auto parts, as well as the use of particular marks or logos using that word. Both parties claim the right to use of the word. Since at least February 2008 (and possibly earlier), Defendant has utilized a black and red mark with the word "Precision" on wheel hub assemblies. In February 2008, Defendant had acquired this (or a similar) mark from North Coast Bearings, Inc., which had used the mark since at least June 2006. Defendant may have acquired

other "Precision" marks from North Coast as well, some of which had been used as early as 1992. However, none of these marks had been registered with the Patent and Trademark Office, ("the PTO"), by either North Coast or Defendant.

In 1965, Precision Universal Joint Corporation registered a trademark in the word "Precision" in connection with universal joints (or "u-joints"). Its use of the word in its trademark appeared in blue and yellow and in a font different from North Coast's and Defendant's use of the word. At some point in time, Federal-Mogul acquired this trademark and continued using it to brand its u-joints. In 2010, Federal-Mogul decided to phase out its Precision brand and offered to sell it to Plaintiff. Plaintiff expressed interest, but only if the trademark could be extended to wheel hub assemblies. Accordingly, in March 2010, Federal-Mogul applied with the PTO for registration of the word marks "Precision" and "Precision Hub Assemblies" for use in connection with the sale of wheel hub assemblies. In June 2010, Plaintiff began selling Precision-branded wheel hubs using the yellow and blue logo under a license with Federal-Mogul. In May 2011, the PTO granted Federal-Mogul's applications and issued registrations for the word "Precision" and the phrase "Precision Hub Assemblies," both in conjunction with wheel hub assemblies. In November 2011, Federal-Mogul assigned the trademarks to Plaintiff.

Meanwhile, by the end of 2010 Defendant was aware that Plaintiff was selling Precision-branded wheel hubs using the yellow and blue logo. Discussions between Plaintiff and Defendant commenced, and continued over the course of years. Topics discussed included the parties' rights to use their respective marks, the possibilities for an agreement regarding their respective rights, and the possibilities for a business relationship; however, a formal agreement was never reached.

In December 2015, Defendant filed its own application for a registration. It also filed a Petition for Cancellation with the Trademark Trial and Appeal Board, ("TTAB"), thereby initiating

a process of *inter partes* review of the registrations issued to Federal-Mogul and now owned by Plaintiff. In its Petition for Cancellation, Defendant claimed to have a common law trademark that predated Federal-Mogul's application, and that Plaintiff's registration constituted a "cloud" on its own application for registration. (Doc. 257-4, pp. 4-6.) Plaintiff filed this lawsuit in March 2016, then asked the TTAB to stay its proceedings until the suit was concluded. Among the grounds for the requested stay was Plaintiff's argument that the lawsuit "involves the same issues which would be resolved" by the TTAB, "namely whether [Plaintiff's registrations] should be cancelled . . . because of Defendant's alleged prior rights, and the determination . . . by the District Court will very likely be completely dispositive of the issues involved in this proceeding."[1] The TTAB granted Plaintiff's request and stayed its proceedings.

The parties presented several claims and counterclaims. Specifically, Plaintiff's Amended Complaint, (Doc. 73), asserts eight counts:

I. Trademark Infringement under Federal Law, alleging that Defendant has infringed on Plaintiff's registered mark

II. False Designation of Origin under Federal Law

III. Unfair Competition under Federal Law

IV. Trademark Infringement under Missouri Law

V. Unfair Competition under Missouri Law

VI. Violation of Missouri's Anti-Dilution Statute

VII. A request for a Declaratory Judgment declaring that (a) Defendant does not have a common law trademark, (b) Defendant's Petition for Cancellation filed with the TTAB is void, and (c) Defendant's 2015 application to register a trademark is void.

---

[1] http://ttabvue.uspto.gov/ttabvue/v?pno=92062906&pty=CAN&eno=8 (last visited October 2, 2018).

VIII.  An alternative claim for Trademark Infringement under Federal Law, alleging that even if Plaintiff's registered mark is invalid it has a common law mark, and Defendant has infringed on Plaintiff's common law mark

Defendant's Amended Answer, (Doc. 335), includes eight counterclaims:

  I.  False Designation of Origin under Federal Law

  II.  Unfair Competition under Federal Law

  III.  A request for a Declaratory Judgment declaring that Defendant's mark does not infringe on Plaintiff's mark

  IV.  A request to cancel Plaintiff's Trademark, based on Defendant's prior common law trademark.

  V.  Unfair Competition under Missouri Law

  VI.  Unfair Competition under Ohio Law

  VII.  Deceptive Trade Practices under Ohio Law

  VIII.  A request to cancel Plaintiff's registered trademark, based on allegations that Plaintiff committed fraud on the PTO.

The Court granted summary judgment on all damage-seeking claims, leaving for resolution (1) Plaintiff's Count VII and (2) Defendant's Counterclaim IV. However, the Court did not address Plaintiff's arguments for summary judgment on Counterclaim IV, stating that it would "address that counterclaim, if necessary, after the mediation." (Doc. 429, p. 6 n.4.)

## II. DISCUSSION

As stated earlier, Defendant contends that the Court's rulings deprive it of jurisdiction over the remaining claims. First, Defendant argues that absent a claim by either party alleging infringement or otherwise seeking damages, Plaintiff lacks standing to seek a declaration that Defendant does not have a common law mark. Alternatively, Defendant argues that Plaintiff's request for such a declaration is moot in light of the Court's rulings. Second, Defendant argues that the Court lacks jurisdiction over Counterclaim IV (although, Defendant does not actually

4

dismiss its own counterclaim).  Plaintiff responds that it has standing to seek a declaration that Defendant does not have a common law mark and its request is not moot.  Plaintiff does not specifically respond to Defendant's argument that the Court lacks jurisdiction over Counterclaim IV.

## A.  Plaintiff's Count VII

### *1.  Jurisdiction*

Defendant's arguments about standing and mootness with respect to Count VII are related, both factually and legally.  It points to the Court's prior ruling that neither party could present evidence of actual or likely confusion.  Relying on that decision, Defendant argues that Plaintiff lacks an injury or potential injury due to Defendant's assertion of a common law mark, so Plaintiff lacks standing to seek the declaration.  For the same reasons, Defendant argues that the Court's ruling renders any claim that Plaintiff might have had moot.  The Court concludes that it lacks sufficient information to resolve this issue.[2]

Article III of the Constitution limits federal courts to resolving cases and controversies, and "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016).  To demonstrate standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.*  A case becomes moot – and therefore no longer a 'Case' or 'Controversy' for purposes of

---

[2] The Court rejects Plaintiff's suggestion that it still has jurisdiction merely because there are fully briefed issues that the Court has not resolved, (Doc. 448, pp. 3-4), because there is no law to support this theory and the argument is counter to the notion of jurisdiction.  Similarly, the Court does not agree that the supplemental jurisdiction statute, 28 U.S.C. § 1367, provides a basis for the Court to exercise its discretion to retain jurisdiction over an issue where standing (and, hence, a case or controversy) is absent.  Section 1367 applies to claims that are part of an already-existing case or controversy, *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 558 (2005), and thus presupposes the existence of a case or controversy.  Nothing in its language allows a court to resolve legal issues when a case or controversy is absent.

Article III – when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013). "Mootness is akin to the doctrine of standing because the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Phelps-Roper v. City of Manchester,* 697 F.3d 678, 687 (8th Cir. 2012) (en banc) (quotation omitted). Defendant does not dispute that when this case started Plaintiff had standing; that is, that Plaintiff had the necessary injury (or potential injury) to seek a declaration that Defendant did not have a common law mark. But, it invokes both standing and mootness to argue that (1) any such injury ceased to exist when the Court ruled that there was no evidence in the Record of confusion or a likelihood of confusion and (2) Plaintiff's request for a declaration is moot because such a declaration will not affect the parties' relationship or rights with respect to each other.

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not serve as an independent basis for jurisdiction. Instead, it allows a court to "declare the rights and other legal relations of any interested party seeking such declaration" if presented "a case of actual controversy within its jurisdiction . . . ." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the types of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 130 (2007). To satisfy this requirement, "there must exist a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. A live dispute must exist between the parties at the time of the court's hearing." *Gopher Oil Co. v. Bunker,* 84 F.3d 1047, 1050 (8th Cir. 1996) (quotations and citations omitted); *see also MedImmune, Inc.,* 549 U.S. at 771.

The standing inquiry is fact-specific. In *MedImmune,* the Supreme Court conceded that its cases

> do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not. Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*MedImmune,* 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quotation omitted).

Plaintiff relies primarily on the pending TTAB proceeding to establish the immediacy of the parties' controversy, and Defendant contends that the TTAB proceedings are irrelevant to the inquiry. Defendant's position appears to be incorrect. "[T]o hold TTAB opposition filings as a class irrelevant to Article III analysis . . . would disregard the Supreme Court's direction [in *MedImmune*] that, in assessing whether a live controversy exists between the parties, we must take into account all the circumstances" in the case. *Surefoot LC v. Sure Foot Corp.,* 531 F.3d 1236, 1246 (10th Cir. 2008) (Gorsuch, J.). Other courts to address the issue also have not held that the TTAB proceedings are irrelevant; instead, they have held that something more than a pending TTAB proceeding is necessary to establish standing. *E.g., Hogs and Heroes Foundation Inc. v. Heroes, Inc.,* 202 F. Supp. 3d 490 (D. Md. 2016); *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.,* 784 F. Supp. 2d 391 (S.D.N.Y. 2011); *see also Surefoot,* 531 F.3d at 1247 (10th Cir. 2008) (Gorsuch, J.) ("underscore[ing] that the court was not holding that standing exists where the only

indicia of a live infringement controversy is the existence of a single TTAB opposition proceeding"); *O'Neill v. Jesco Imports, Inc.,* 2006 WL 2623220 (W.D. Mo. 2006).

Therefore, while the TTAB proceedings are not irrelevant to the inquiry, more is required in order for standing to exist. Plaintiff relies upon the fact that Count VII remains critical to the pending TTAB proceedings and cites the Court's prior observation that the TTAB cannot determine whether Defendant has a common law mark. (Doc. 448, p. 12 (citing Doc. 429, p. 12).) Plaintiff's point is persuasive: If the TTAB cannot determine whether Defendant has a common law mark, an immediate conflict may exist because (1) this determination would still be necessary to resolve the pending TTAB proceeding initiated by Defendant but (2) only this Court, and not the TTAB, could resolve the issue. On the other hand, if the TTAB can make such a determination, then an immediate conflict (and, hence, standing) may be lacking because the issue can be resolved in that forum. For its part, Defendant has not discussed whether the TTAB can determine whether Defendant has a common law mark.

However, the Court requires further discussion of the issue before concluding whether the TTAB can or cannot determine whether Defendant has a common law mark. In its prior Order, the Court stated that "the TTAB . . . cannot adjudicate whether Defendant has a common law mark," (Doc. 429, p. 12), citing Professor McCarthy's treatise for support. Professor McCarthy explains that the TTAB can only determine whether a registration is valid, and while it can cancel a registration it cannot "invalidate underlying common law rights in the trademark because those rights do not flow from federal registration." 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 20:1 (5th ed. 2018). This passage states that the TTAB cannot ascertain whether Plaintiff has a common law mark – which suggests that the TTAB also cannot ascertain whether Defendant has a common law mark. This would leave this Court as the only forum

capable of addressing an issue that is integral to the TTAB proceeding and thus establish the immediate dispute necessary to support standing. However, the Court's prior observation was made in passing, and was not critical to the matter being analyzed. Now, however, the TTAB's powers are critical to the jurisdictional inquiry, and the Court would prefer that its conclusions about the TTAB's powers be based on legal authority apart from Professor McCarthy's treatise.

The Court directs the parties to be prepared to address this issue at the Pretrial Conference. First, Plaintiff shall explain whether there is in anything other than the TTAB proceedings that it believes will establish the immediate controversy necessary to support standing. Second, Plaintiff shall explain whether the TTAB can resolve the issues raised in Count VII and provide legal authority to support its position. Defendant shall be prepared to respond to these points. If the parties desire, they may file a brief (not to exceed four pages) written submission on these issues by noon on October 11, 2018.

### 2. Discretion Under the Declaratory Judgment Act

Separate and apart from the question of whether the Court has jurisdiction is the question of whether the Court should exercise it to award purely declaratory relief. The Court is inclined to believe that it should exercise its discretion to consider awarding declaratory relief if the TTAB cannot address Defendant's assertion that it has a common law mark. However, if (1) the TTAB can resolve the issues but (2) Plaintiff demonstrates that there is something else in addition to the TTAB proceeding that will give it standing, the Court must consider whether it *should* entertain Plaintiff's request for declaratory relief. "Relief under 28 U.S.C. § 2201, the Federal Declaratory Judgment Act, is discretionary, and an important factor in exercising that discretion is whether the declaratory judgment plaintiff has another, more appropriate remedy." *Gulf Underwriters Ins. Co.*

*v. Burris,* 674 F.3d 999, 1004 (8th Cir. 2012) (quotation omitted); *see also Roark v. S. Iron R-1 Sch. Dist.,* 573 F.3d 556, 561-62 (8th Cir. 2009) (quotation omitted).

This was the analysis employed by the Tenth Circuit in *Surefoot.* The Tenth Circuit concluded that the plaintiff had standing and "that the district court has jurisdiction to entertain this case, [but] the question remains, whether, as a discretionary matter, it *should* do so." *Surefoot,* 531 F.3d at 1248. The court then remanded the case for the district court's consideration of the issue. Similarly, if the TTAB can address Plaintiff's claim and the Court concludes that it nonetheless has jurisdiction, the question remains whether the Court should exercise that jurisdiction. The parties should also be prepared to address this issue at the pretrial conference.

## B.  Jurisdiction With Respect to Defendant's Counterclaim IV

Defendant contends that its own remaining Counterclaim (Counterclaim IV), which seeks cancellation of Plaintiff's registration, should be dismissed for lack of jurisdiction. Counterclaim IV is brought pursuant to 15 U.S.C. § 1119, which provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, and otherwise rectify the register with respect to the registrations of any party." 15 U.S.C. § 1119. Defendant contends that a request for cancellation under § 1119 must be accompanied by some other claim involving a registered mark and cannot be a free-standing claim. (Doc. 442, pp. 10-15.) The Court agrees with Defendant.

The first sentence of § 1119 "specifies that cancellation may only be sought if there is already an ongoing action that involves a registered mark; it does not indicate that a cancellation claim is an independent cause of action." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgt., Inc.,* 744 F.3d 595, 599 (9th Cir. 2014). "[A] controversy as to the validity of or interference with a registered mark must exist before a district court has jurisdiction to grant the cancellation

remedy." *Ditri v. Coldwell Banker Residential Affiliates, Inc.,* 954 F.2d 869, 873 (3d Cir. 1992); *see also Windsurfing Int'l, Inc. v. AMF Inc.,* 828 F.2d 755, 758-59 (Fed. Cir. 1987). Here, there is no remaining claim involving a registered mark – so, the Court lacks the jurisdiction to consider Defendant's free-standing claim to cancel Plaintiff's registration pursuant to § 1119. Counterclaim IV is dismissed without prejudice.[3]

## III.  CONCLUSION

For the reasons stated, the Motion to Dismiss, (Doc. 442), is **GRANTED IN PART** and Counterclaim IV is dismissed without prejudice for lack of jurisdiction. The Court defers consideration of the motion to the extent that it seeks dismissal of Plaintiff's remaining claim.

**IT IS SO ORDERED.**


/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE:  October  9, 2018            UNITED STATES DISTRICT COURT

---

[3] This ruling makes it unnecessary to consider Plaintiff's arguments that it is entitled to summary judgment on Counterclaim IV.