# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| O'REILLY AUTOMOTIVE STORES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-3102-CV-S-BP |
| | ) | |
| BEARING TECHNOLOGIES, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION DENYING (1) DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S REMAINING CLAIM, AND (2) PLAINTIFF'S REUQEST TO BAR EVIDENCE ON DEFENDANT'S AFFIRMATIVE DEFENSES

On October 9, 2018, the Court issued an Order, (Doc. 499), granting in part and deferring in part Defendant's motion to dismiss for lack of jurisdiction. The Court granted the motion to the extent that it sought to dismiss Defendant's own counterclaim, and deferred a ruling to the extent the motion sought to dismiss Plaintiff's remaining claim. The Order stated that the issue would be addressed during the pretrial conference and permitted the parties to file additional written submissions on the matter. Separately, the parties have submitted filings, (Doc. 497; Doc. 501), addressing whether Defendant's affirmative defenses remain at issue in the case.

With respect to the jurisdictional issue, the Court has considered the parties' written arguments (including the supplemental filings, (Doc. 502; Doc. 503)), and the arguments presented during the pretrial conference held earlier today. The Court has also considered the parties' submissions with respect to the affirmative defenses, as well as their arguments at the pretrial conference. The Court now (1) denies Defendant's motion to dismiss Plaintiff's remaining claim and (2) concludes that Defendant may introduce evidence on the affirmative defenses it has asserted.

# I. BACKGROUND

This Order is essentially a continuation of the Court's previous Order on Defendant's Motion to Dismiss, and it (and other prior orders, *see* Doc. 411, pp. 1-4; Doc. 429, pp. 1-6) sufficiently provide the background to this lawsuit. Accordingly, and in light of the trial's proximity, the Court's recitation of the background will be brief.

This lawsuit is the latest chapter in a conflict between the parties that began in 2010. In June 2010, Plaintiff began selling wheel hub assemblies with a logo employing the word "Precision." At the time the word "Precision" was the subject of an application for registration filed by Federal-Mogul with the Patent and Trademark Office, ("the PTO"); the PTO later granted the registration, and Federal-Mogul sold the registration to Plaintiff. Meanwhile, in October 2010, Defendant filed its own application to register the word, but the PTO advised Defendant that Federal-Mogul's application had priority.

By the end of 2010 or the beginning of 2011, discussions between Plaintiff and Defendant commenced regarding their respective rights to use the word "Precision," with Plaintiff relying on the registration and Defendant relying on its assertion that it had a common law mark that predated the registration. The discussions extended for years, during which time Plaintiff acquired Federal-Mogul's registrations with respect to fuel pumps.[1] However, the parties were never able to resolve their disagreement over their respective rights, nor could they reach an accommodation. The discussions eventually ended, and in December 2015 Defendant filed a Petition for Cancellation with the Trademark Trial and Appeal Board, ("TTAB"), thereby initiating a process of *inter partes* review of the trademarks issued to Federal-Mogul and now owned by Plaintiff. At the same time,

---

[1] Plaintiff also acquired Federal-Mogul's interest in the word "Precision" as it relates to u-joints, but (1) Plaintiff allowed this registration to lapse and it was canceled, and (2) Defendant does not use the word "Precision" to market its u-joints.

Defendant filed another application to register its right to use the word in connection with "wheel hub bearing assemblies, bearing and seals." In its Petition for Cancellation, Defendant claimed to have a common law trademark that predated Federal-Mogul's application, and that Plaintiff's registration constituted a "cloud" on its own application for registration. (Doc. 257-4, pp. 4-6.) Plaintiff filed this lawsuit in March 2016, then asked the TTAB to stay its proceedings until this lawsuit was concluded. The TTAB granted Plaintiff's request, and also suspended the processing of Defendant's application.

Plaintiff's Amended Complaint asserted eight counts, and Defendant's Amended Answer asserted eight counterclaims; the claims advanced various theories and sought monetary and equitable relief. Following a series of rulings from the Court, the only claim remaining is Count VII from Plaintiff's Amended Complaint, which seeks a Declaratory Judgment declaring that (a) Defendant does not have a common law trademark "in the PRECISION marks" superior to Plaintiff's, (b) Defendant's Petition for Cancellation filed with the TTAB is void, and (c) Defendant's 2015 application to register a trademark is void. In its pleadings, Defendant has asserted the affirmative defenses of waiver, laches, estoppel, and unclean hands.

Defendant relies on the Court's prior rulings that there is no proof of confusion or threat of confusion to argue that there is no controversy between the parties sufficient to demonstrate standing. Plaintiff contends that Defendant's repeated assertion that it has a common law mark that predates (and therefore potentially nullifies) Plaintiff's registered marks creates the necessary controversy. Plaintiff also argues that the affirmative defenses do not apply to its remaining claim, which Defendant disputes. The Court resolves these issues below.

3

## II. DISCUSSION

### A. Jurisdiction

Article III of the Constitution limits federal courts to resolving cases and controversies, and "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). To demonstrate standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Defendant does not dispute – and there is no question – that when this case started Plaintiff had standing to seek a declaration regarding the parties' respective rights to use the word "Precision" because that issue was clearly integral to other claims in the case. The question is whether Plaintiff still has standing now that the other claims are no longer in the case, and the Court concludes that it does.

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not serve as an independent basis for jurisdiction. Instead, it allows a court to "declare the rights and other legal relations of any interested party seeking such declaration" if presented "a case of actual controversy within its jurisdiction . . . ." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the types of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 130 (2007). To satisfy this requirement, "there must exist a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. A live dispute must exist between the parties at the time of the court's hearing." *Gopher Oil Co. v. Bunker,* 84 F.3d 1047, 1050 (8th Cir. 1996) (quotations and citations omitted); *see also MedImmune, Inc.,* 549 U.S. at

771. The standing inquiry is fact-specific. In *MedImmune,* the Supreme Court conceded that its cases

> do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not. Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*MedImmune,* 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quotation omitted).

These standards are satisfied in this case. Defendant's assertion that it has a common law mark serves as the basis for its request that the TTAB cancel Plaintiff's trademark registrations. Therefore, a decision as to whether Defendant has a common law mark may affect the cancellation proceedings and, consequently, both parties. Defendant has argued, and the Court has agreed, that the TTAB proceedings are not enough on their own to create standing; however, the existence of the TTAB proceedings are relevant to the analysis. (*See* Doc. 499, pp. 7-8.) Further, the Court is persuaded that the parties' dispute about their respective rights to use the word "Precision" is not limited to the TTAB proceedings. The parties disputed the issue for approximately five years before the TTAB proceedings commenced. Defendant has relied on its common law mark not only to seek cancellation of Plaintiff's mark, but also to support its application for registration of a mark that is not limited to wheel hub assemblies. This lawsuit has been pending since March 2016, and in these proceedings Defendant has asserted that it has a common law mark that extends

beyond wheel hub assemblies. Even now, at the same time that it contends that there is no controversy between the parties, and even though Plaintiff has repeatedly referenced the breadth of Defendant's asserted rights in the word, Defendant has not disavowed its claim that its right to use the word is superior to Plaintiff's. Thus, while certain aspects of the parties' disagreement have been resolved, there remains the threat of future litigation and continued conflict between the parties because of their conflicting stances with respect to whose rights are superior.

In addition to the existence of a conflict lasting almost eight years, the Record reflects additional consequences arising from this conflict. The parties have spent significant sums of money to promote their marks and made a significant number of sales with products bearing those marks. (*E.g.,* Doc. 429, pp. 17-18; Doc. 239, ¶¶ 5-7.) This means that while each party is actively working and expending resources to promote its brand, one of them does not have the right to use it. This creates the adversity necessary to support standing. "[I]n applying these rules to fact situations before them to determine whether or not there is an 'actual controversy' courts should make a pragmatic judgment, aware of the business realities that are involved." *Sherwood Med. Indus., Inc. v. Deknatel, Inc.,* 512 F.2d 724, 728 (8th Cir. 1975); *see also Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.,* 687 F.3d 1076, 1081 (8th Cir. 2012) (recognizing that in patent infringement cases "the adverse interests of party-competitors are typically different and less concrete than" in other kinds of cases); *Rhoades v. Avon Prod., Inc.,* 504 F.3d 1151, 157 (9th Cir. 2007).

The more that the parties spend in time, money and resources promoting the word "Precision", the more important it is for them to know which one has the right to do so. Each party is promoting its respective mark utilizing the word "Precision," hoping to successfully further its association with the word in the mind of the consuming public. At the same time, only one of

6

them has the right to use the word. Thus, if Defendant is correct when it contends that it has a superior common law right to the word, and if Plaintiff successfully promotes its mark with the word "Precision," then Plaintiff will inevitably create the confusion necessary to expose itself to liability. Or, Plaintiff could avoid the risk of liability by trying not to successfully promote the word even though it believes that it has the legal right to do so. This inevitability is attributable to (1) the parties' dispute over their contrasting legal rights and (2) their continued efforts to associate themselves with their logos and the word. Given the facts in this particular case, Plaintiff's uncertainty as to its ability to take advantage of its registration makes the conflict sufficiently immediate to give Plaintiff standing to pursue the declaration it seeks in Count VII.

Defendant has cited a series of district court decisions in which there were related proceedings in the TTAB or the PTO and that held the necessary immediacy had not been established. The Court finds that these cases are distinguishable.

- *SnoWizard, Inc. v. Snow Ball's Chance, Ltd.,* 2015 WL 5682460 (E.D. La. 2015) – The plaintiff prevailed in a prior lawsuit and obtained a declaration that its trademark was valid. A different party – one not involved in the prior litigation – filed a petition to cancel the trademarks in the TTAB. The plaintiff filed a second lawsuit, seeking to have the district court extend the judgment in the first suit to bar the non-party's cancellation petition. The district court declined, observing that a request to apply the doctrine of res judicata in this manner was barred by the Fifth Circuit because "such a request does not constitute an actual case or controversy." *SnoWizard, Inc.,* 2015 WL 5682640 at *6. The issue involved was different than the issues in this case, so the decision in *SnoWizard* has no application here.

- *O'Neill v. Jesco Imports, Inc.,* 2006 WL 2623220 (W.D. Mo. 2006) – The plaintiff filed an application to register a trademark, which was opposed by defendant in the TTAB. Plaintiff later

filed suit, seeking a declaration that its rights to the mark were superior to the defendant's. The district court concluded that the TTAB proceeding did not provide the immediate conflict necessary to justify declaratory relief because the application had been pending for almost ten years before the lawsuit was filed without any effort by the plaintiff to prosecute his application or to market the product in question. *O'Neill,* 2006 WL 2623220 at *4. In contrast, there is greater immediacy in this case.

- *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391 (S.D.N.Y. 2011) – The plaintiff attempted to register a trademark, and the defendant sent a cease and desist letter demanding that the plaintiff abandon its registration efforts, and "did not . . . contest plaintiff's continued use of the mark, or make any further demands." *Vina Casa Tamaya,* 784 F. Supp. 2d at 395. The defendant opposed the registration in the PTO, but did not contend that the plaintiff's mark infringed on its mark or demand that plaintiff stop using its mark. The district court held that without a claim for infringement or a demand that plaintiff stop using its mark, this was insufficient to establish the adversity necessary to entertain the plaintiff's request for a declaration that its mark did not infringe on the defendant's. *See American Time Exchange, LLC v. Tissot SA,* 2017 WL 4712634, *2 (S.D.N.Y. 2017) (differentiating *Vina Casa.*) In this case, there is more indicia of immediate adversity.

- *Hogs and Heroes Foundation Inc. v. Heroes, Inc.,* 202 F. Supp. 3d 490 (D. Md. 2016) – The plaintiff applied for registration and the defendant filed a Notice of Opposition with the TTAB. The plaintiff then filed suit, seeking a declaration that its mark did not infringe on the defendant's mark and would not lead to customer confusion. The district court cited *Vina Casa Tamaya* for the proposition that a dispute before the TTAB is insufficient to establish adversity for purposes of a declaratory judgment action. *Hogs and Heroes,* 202 F. Supp. 3d at 495. The district court

discussed the defendant's history of defending its mark and the discussions between the parties. However, the district court found these facts to be insufficient to demonstrate adversity; "the prior cases [were] remote, episodic, and not related to Plaintiff," and described the parties as engaging in "brief settlement discussions." *Id.* at 495-96. The facts in this case demonstrate a longer direct disagreement between the parties.

Having concluded that the Court has jurisdiction, the next issue to consider is whether the Court should exercise it. The Court has discretion not to entertain a request for declaratory relief, but in this case the Court concludes that it should allow Count VII to proceed. The Court's discretion is more limited in the absence of parallel proceedings. *E.g., Gulf Underwriters Ins. Co. v. Burris,* 674 F.3d 999, 1004 (8th Cir. 2012); *Scottsdale Ins. Co. v. Detco Indus.,* 426 F.3d 994, 998 (8th Cir. 2005). Here, the TTAB proceedings may or may not address the issue raised in Count VII. Moreover, even if it does, it may address it only in the limited context of wheel hub assemblies. Thus, the Court is not persuaded that there are parallel proceedings, and given the factors that the Court must consider, *see Scottsdale Ins.,* 426 F.3d at 998-99, the Court concludes that it should entertain Plaintiff's claim.[2]

### B. Defendant's Affirmative Defenses

Plaintiff argues that its request for declaratory relief is not subject to affirmative defenses. It reasons that its request for declaratory relief is actually a defense to Defendant's cancellation proceeding. "Given that it is [Defendant] that is seeking affirmative relief, it cannot both seek that relief and argue that [Plaintiff's] positions in response are precluded by alleged 'affirmative

---

[2] The Court would reach the same conclusion even if the TTAB proceedings are considered a parallel proceeding, given the amount of time this case has been pending and progress made in this forum as opposed to the TTAB. Simply put, the issue of whether to exercise jurisdiction under the Declaratory Judgment Act has arisen on the eve of trial, and it is more efficient to proceed to trial in less than two weeks than to dismiss the case and send the parties back to the TTAB.

defenses.'" (Doc. 497, p. 2.)  Plaintiff cites no legal authority for this proposition, and the Court is not persuaded that the proposition is true.  For instance: Plaintiff seeks a declaration that Defendant does not have a common law mark, and it is conceivable that Plaintiff previously took some action that estops it from taking this position.  Given that the trial (1) is in ten days and (2) the evidence on the defenses will not be significant, the Court is not inclined to preclude admission of evidence on these issues in advance of trial.

### III.  CONCLUSION

For the reasons stated, the Court denies (1) Defendant's request to dismiss Count VII and (2) Plaintiff's request to bar evidence on Defendant's affirmative defenses.


/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE:  October 12, 2018            UNITED STATES DISTRICT COURT