```
 1                IN THE UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF MISSOURI
 2                        SOUTHERN DIVISION

 3
     O'REILLY AUTOMOTIVE STORES,     )
 4   INC.,                           )
                                     )   No. 16-03102-CV-S-BP
 5             Plaintiff,            )    October 12, 2018
                                     )   Kansas City, Missouri
 6        V.                         )   CIVIL
                                     )
 7   BEARING TECHNOLOGIES, LTD.,     )
                                     )
 8             Defendant.            )

 9

10

11            TRANSCRIPT OF PRETRIAL CONFERENCE

12
              BEFORE THE HONORABLE BETH PHILLIPS
13              UNITED STATES DISTRICT JUDGE

14
         Proceedings recorded by electronic stenography
15            Transcript produced by computer

16

17

18

19

20

21

22

23

24

25
```

Kathleen M. Wirt, RDR, CRR
United States Court Reporter
400 E. 9th Street, Suite 7452 * Kansas City, MO 64106
816-512-5608

Case 6:16-cv-03102-BP   Document 507   Filed 10/15/18   Page 1 of 27

```
 1                        APPEARANCES

 2
         For Plaintiff:      MR. KENNETH A. PLEVAN
 3                           MR. DAVID M. LAMB
                             Skadden Arps Slate Meagher & Flom, LLP
 4                           4 Times Square
                             New York, NY 10036
 5
                             MR. JASON C. SMITH
 6                           Spencer Fane LLP
                             2144 E. Republic Road, Suite B300
 7                           Springfield, MO 65804

 8       For Defendant:      MS. MEREDITH M. WILKES
                             MS. SUSAN M. GERBER
 9                           MS. ALLISON L. HAUGEN
                             Jones Day
10                           901 Lakeside Ave.
                             Cleveland, OH 44114
11
                             MS. MIRANDA M. SOOTER
12                           Armstrong Teasdale LLP
                             2345 Grand Boulevard, Suite 1500
13                           Kansas City, MO 64108

14

15

16

17

18

19

20

21

22

23

24

25
```

Kathleen M. Wirt, RDR, CRR
United States Court Reporter
400 E. 9th Street, Suite 7452 * Kansas City, MO 64106
816-512-5608

Case 6:16-cv-03102-BP   Document 507   Filed 10/15/18   Page 2 of 27

1                            OCTOBER 12, 2018

2                                - - -

3              THE COURT:  Good morning.  We're here in the case of

4    O'Reilly Automotive Stores, Inc., versus Bearing Technology,

5    Case No. 16-3102.  Could counsel please enter their appearance?

6              MR. SMITH:  Your Honor, on behalf of O'Reilly, Jason

7    Smith.  And I have my co-counsel, Ken Plevan and David Lamb.

8              THE COURT:  Thank you.

9              MS. WILKES:  Good morning, Your Honor, Meredith

10   Wilkes of Jones Day on behalf of Bearing Technologies.  With me

11   is Susan Gerber, Allison Haugen, and local counsel, Miranda

12   Sooter from Armstrong Teasdale.

13             THE COURT:  Thank you.  Well, obviously, there are a

14   number of issues to take up today, and the case, I have to

15   admit, is in an unusual position.  Typically, I like to resolve

16   jurisdictional issues much earlier than approximately a week

17   before trial.  And I have to confess that I'm really not a

18   last-minute decisionmaker in a typical fashion.  But, given the

19   circumstances that this case presented and being transferred to

20   me at such a late stage, we are where we are, and we've got to

21   deal with it.

22             So let's, obviously, first take up the issue of

23   jurisdiction, since that is a threshold question here.  And

24   I've read the supplemental briefing on this issue, which was

25   extremely helpful.  And I realize that you didn't have much

time to put that together, and I appreciate that fact because
it has been helpful. Let me start with a few questions for
O'Reilly. And I'm not sure, Mr. Plevan, are you going to speak
on this?

MR. PLEVAN: Yes. Yes, Your Honor.

THE COURT: Can you very briefly explain to me your
argument as to why you believe that there is a case or
controversy, given my rulings regarding the lack of likelihood
that there is confusion between the two marks.

MR. PLEVAN: Yes, Your Honor. It's pretty much what
we said in our letter, and that is that there's the one request
in our Count VII that asks for declaration that Bearing Tech
does not have common law rights superior to any of our rights.
And we think that it applies not just to wheel hubs, but to
wheel bearings and seals, and that has been asserted in this
case. But it's not at all clear to us that the trademark trial
and the TTAB, if I may, will deal with that issue because our
registration that's being challenged in the current petition
for cancellation relates to wheel hubs and wheel hubs only.

And we also believe that Your Honor's ruling on lack
of confusion will, in effect, result in a preliminary on motion
dismissal of that petition for cancellation. So because, as
Bearing Tech has said, they have to establish, they have to be
able to allege likelihood of confusion in order to have a
proper cancellation petition. And we think as a matter of

1  collateral estoppel, that issue will result in the TTAB never
2  issuing any further merits decision.
3        THE COURT:  Let me ask you a question that may or
4  may not be relevant, but, given my lack of familiarity with the
5  proceedings in front of the TTAB, I understand that that
6  proceeding is currently stayed.  I would have to guess that the
7  rulings in this case will be appealed to the Eighth Circuit.
8  If that is, in fact, the case, will the TTAB proceeding most
9  likely remain stayed until the Eighth Circuit rules?
10        MR. PLEVAN:  That is both our view and our position,
11  Your Honor.  The TTAB in my experience always defers to a
12  pending federal court lawsuit, and if there's an appeal, the
13  issues are not over.  You know, in theory, the Eighth Circuit
14  can affirm or send it back for trial in front of Your Honor in
15  Springfield.
16        THE COURT:  Right.  Okay.  Thank you.  I may have
17  some follow-up questions.
18        But, Ms. Wilkes, let me ask you a few questions.
19  With respect to whether or not there is a case or controversy
20  currently in this lawsuit, it seems to me that by taking the
21  position that there's no likelihood of confusion, therefore, no
22  controversy, you're essentially relying on these, kind of the
23  pre-*MedImmune* standard of the need for a threat of lawsuit.
24  And it seems to me that *MedImmune* obviously broadened the
25  definition of a controversy under the Declaratory Judgment Act.

And to the extent *Surefoot*, although it's a Tenth Circuit case,
to the extent it can be informative here in the Eighth Circuit,
also seems to broaden the standard to be more of a definitive,
concrete "touching on the legal relations of the parties"
standard is some of the language they have in there.

In this particular case, I think if you asked the
man on the street if there was a controversy between the two
parties, they most certainly would say yes.  And furthermore,
it seems to me that your client, you know, believes that its
rights to the mark are superior to those of O'Reilly, which
would touch upon the legal relations between the parties.

So how do you distinguish your position that there
is no case or controversy from this essentially broadened
standard in the cases since *MedImmune*?

MS. WILKES:  Thank you, Your Honor.  As the Court is
aware, on its own order and in the briefing that we've
submitted, post-*MedImmune* there have been several decisions --
the *Hogs & Heroes* case from 2016, the *Vina Casa* case from 2011,
the *SnoWizard* case in 2015 -- that hold a very basic
proposition, which is the existence of a TTAB proceeding alone,
an opposition proceeding, a cancellation proceeding, is not
enough to confer Article III jurisdiction on the United States
District Court.  A plus-one is needed.  You need a substantial
threat of infringement or a substantial threat of liability,
which was the issue in *MedImmune*, right?  That we don't want to

continue paying these royalty fees.  There needs to be some
sort of substantial threat to really trigger that Article III
jurisdiction to create the case or controversy.

          And here, we absolutely don't have it.  The mere
filing of the cancellation petition doesn't give rise.  You
asked O'Reilly to come forward with a plus-one, and there is no
plus-one by virtue of the fact that this Court has already held
on summary judgment that there can be no infringement, no
infringement with respect to wheel hub assemblies, no
infringement with respect to bearings, no wheel hub -- seals,
or any of the goods that are at issue in this case.  The Court
has already extinguished any threat of liability.

          So for those reasons, Your Honor, the cases and the
holdings in the *SnoWizard*, *Vina Casa*, and the *Hogs & Heroes*
demonstrate unequivocally that, absent that plus-one, there is
no Article III case or controversy, even in the post-*MedImmune*
world.

          THE COURT:  I probably should have started this
proceeding by saying I am not prepared to rule from the bench
today on this issue.  I wanted to see if there were any other
arguments that the parties wanted to make.

          I personally think that this is a close call.  I
realize the parties disagree with me, but I do think this is a
close call.  And so I will be making a ruling very quickly, but
I will not be making a ruling from the bench today on this

1    particular issue.

2           So if there isn't anything else that the parties

3    wish to address on this particular issue, then I'm going to

4    take the issue under advisement.  And, again, I recognize a

5    decision needs to be made quickly, and it will be made quickly

6    on this issue.

7           Let's, then, move to the second issue that the

8    parties wish to bring up, which is whether or not evidence

9    regarding the affirmative defenses would be admissible, should

10   we have a bench trial on this issue.  And since you're

11   standing, why don't you give me a little bit more insight as to

12   why, Ms. Wilkes, you believe that this evidence should be

13   admissible, given the current state of the lawsuit.

14          MS. WILKES:  Well, we've seen no authority from

15   O'Reilly to support the position that once a declaratory claim

16   is the only claim in a case that somehow rules as to

17   affirmative defenses no longer apply.  So we believe that if we

18   have to be brought into United States District Court and face

19   claims, then we should be entitled to assert defenses to them.

20          THE COURT:  Mr. Plevan, it seems to me that if this

21   is a bench trial that this evidence isn't going to

22   significantly extend the trial, and that there could be some

23   circumstances where the evidence is relevant and admissible.

24          Why do you think that, given the fact that it will

25   be a bench trial, that we shouldn't go ahead and hear the

1  evidence?

2      MR. PLEVAN:  Well, Your Honor, I think -- compared

3  to the two-week jury trial we were originally planning on, it

4  seemed to us, first of all, and I don't want to be -- I'm

5  sorry, I shouldn't say I.

6      We don't want to be in a situation where we don't

7  fully understand the posture of the case.  It seemed to us

8  based on the Court's rulings that the counterclaim has been

9  dismissed for the declaratory -- that sought cancellation of

10  our marks -- of our registration, excuse me, of our

11  registrations, to which we had affirmative defenses of

12  acquiescence and laches.

13      Now, we don't want to be in a situation where we've

14  found ourselves prejudiced because we didn't realize those were

15  defenses that are here now.  It seemed to us those are defenses

16  only in connection with their, Bearing Tech's position that our

17  registration should be cancelled.

18      On the other hand, our declaration comes -- request

19  for a declaration comes close to that.  And so I guess we

20  need -- we would like clarification because we can certainly

21  put on, and we're prepared to, and it won't lengthen the trial

22  that much, I agree, Your Honor, maybe a day, non-jury, to put

23  on those affirmative defenses.

24      But what we were seeking was a declaration that they

25  did not have, Bearing Tech did not have common law rights that

preceded any of our -- that had priority over any of our
rights. And that all relates to March 1, 2010, and before
that, not something that happened in 2014 and 2015. And so
since it's -- even though it's our declaration, it's Bearing
Tech's burden of proof, as Your Honor has held, you know, in
the opinions. And so it seemed to us that since they are
trying to assert something, that they didn't have a right to
assert both an affirmative claim and affirmative defenses, in
effect, at the same time. It's like bringing a lawsuit and
raising -- their affirmative defenses in their pleading was
against our affirmative claims. So I think a clarification is
certainly what we need.

THE COURT: Okay. And I agree with you in a
general -- as a general proposition that it would be unusual to
bring affirmative defenses with an affirmative claim, but this
is a little bit different.

Ms. Wilkes, I am interested, though -- it seems as
though a lot of the evidence regarding the affirmative defenses
is actions that were taken in 2014 and later. How do you think
that that evidence is relevant to what we now have as the
ultimate question, which is whether or not your client's common
law rights predate that of O'Reilly, which goes back to
approximately, as I understand it, 2010?

MS. WILKES: Certainly, Your Honor. So the
affirmative defenses of waiver, laches, estoppel, and unclean

1  hands all relate to that declaratory claim.

2          First, in this Court's summary judgment order, you

3  held over the issue of our affirmative defense of waiver,

4  particularly because O'Reilly's in-house counsel at the time

5  stated the fact that no one was going to pursue Bearing

6  Technologies, and yet here we are, and that Bearing

7  Technologies had a strong case for common law rights.  And so

8  it seems unfair, at the very minimum, to preclude us from

9  putting on that sort of evidence with respect to our waiver

10 claim, our estoppel claim, and our laches claim.

11         Also, we have an unclean hands defense here because

12 of the way in which this case was brought and the manner in

13 which it was litigated, and we believe we're entitled to put on

14 evidence with respect to that, as well.  It shouldn't matter

15 that it's a declaratory claim and not one that is seeking

16 damages or injunctive relief.  We're still entitled to put

17 forth affirmative defenses to it.  They brought the claim,

18 we're entitled to defend ourselves.

19         THE COURT:  I'll make a definitive ruling at the

20 same time I let you know about the jurisdictional issue.  I

21 will let you know that I have a leaning on this issue, and the

22 leaning is that we will admit the evidence for the reasons that

23 I've just stated.  But for purposes of planning for the trial,

24 I will make a definitive ruling when we issue the order on the

25 jurisdiction, depending on what the order on the jurisdiction

1  issue is.

2         The only other issues that I have to discuss with

3  the parties are the issues of the motions in limine and the

4  depo designations.  Given the fact that it is a bench trial,

5  I'm not inclined to rule on the motions in limine.  Most of the

6  pieces of evidence that you're seeking to exclude I'm already

7  aware of through the litigation up to this point.  And so if

8  there is a particular issue that you think needs to be ruled on

9  in order to save time or for your planning or otherwise, I'm

10 more than happy to take that issue up with the parties.  But at

11 this point, my thought is to take the issues with the case and

12 require that the parties object to the evidence

13 contemporaneously with the evidence.

14        Are there any issues that you think are burning and

15 need to be taken up prior to the trial?

16        MR. PLEVAN:  No, Your Honor.

17        THE COURT:  Okay.

18        MS. WILKES:  No, Your Honor.

19        THE COURT:  Okay.  The last issue in question --

20 well, it's not the last issue.  The -- another issue that I

21 have or thought I had is with respect to the depo designations.

22 I have not had the opportunity to review the depo -- the

23 objections to the depo designations.  My thought is, again, to

24 take those up with the trial for the same reasons.

25        One of the questions I have for the parties is

1 whether or not you intend to -- if the depos are video depos
2 and you intend to play them during the bench trial, or if they
3 are solely transcripts which you intend to just submit. So
4 what are the parties' thoughts on that issue?

5 MR. PLEVAN: Well, Your Honor, I can go first, as to
6 plaintiff.

7 And we believe we owe the Court another -- well, we
8 need to withdraw some of the testimony because our original
9 designations --

10 THE COURT: Okay.

11 MR. PLEVAN: -- were prior to Your Honor's rulings.

12 THE COURT: Sure.

13 MR. PLEVAN: So we have things that relate only to
14 damages and to confusion. So we're not going to add anything,
15 but we've got to go back and look at those.

16 THE COURT: Okay. There's nothing that makes a
17 judge happier than withdrawing some depo designations.

18 MR. PLEVAN: Yeah.

19 THE COURT: I'm good with that.

20 MR. PLEVAN: Second of all, Your Honor, with one or
21 two really exceptions, and it depends on who is testifying
22 because on cross-examination, we very well will likely, if a
23 witness says he or she didn't say something at a -- you know,
24 at a deposition, we may show them video of the prior testimony.
25 But we're not requesting that the Court -- the great majority

1  of this is not a question of credibility.  The video is

2  available to the Court, but if the Court needs to look at it

3  after the trial is over, that's fine.  We're not planning on

4  playing the testimony, and we'd just as soon have it submitted.

5  And if Your Honor asks for post-trial finding -- proposed

6  findings, for example, we'll cite it.

7              THE COURT:  Okay.  Ms. Wilkes, what are your

8  thoughts on this?

9              MS. WILKES:  We have the same position, Your Honor.

10  And we will also have to go back and withdraw testimony based

11  on the Court's rulings and take another look at our exhibit

12  list, as well, and make some modifications there.

13              We don't know who O'Reilly is planning to call live

14  at trial and who they may be planning to call by deposition.

15  So that may be the only footnote with respect to some videotape

16  deposition testimony, because sometimes that can be a little

17  bit easier to follow than just the written.  And we're mindful

18  of the Court's time and will limit any video deposition with

19  respect to those witnesses.  But we may not play any video,

20  depending on who it is that's going to be testifying live at

21  trial.

22              THE COURT:  Okay.  That brings me to my last topic,

23  which is the amount of time that the parties think that the

24  trial will take, given the previous rulings.

25              Mr. Plevan, how many days do you think your

1  case-in-chief will take?

2          MR. PLEVAN:  No more than two days, Your Honor.

3          THE COURT:  Okay.  And Ms. Wilkes, how many days do

4  you think your case will take?

5          MS. WILKES:  It, of course, depends in part on how

6  long plaintiff's case takes, but I think that the case in its

7  entirety takes longer than five days to try, quite frankly.

8          THE COURT:  Okay.

9          MS. WILKES:  We originally had said that two weeks'

10 time was necessary.  And since then, although the Court has

11 done a tremendous amount of work getting rid of claims in the

12 case, most of the issues still remain, and all that really is

13 gone is damages and injunction, and that really only gets rid

14 of a couple of witnesses.

15         THE COURT:  Right.

16         MS. WILKES:  So, unfortunately, while I'd like to be

17 able to tell the Court we can wrap this up in two days, Your

18 Honor, I really don't think that we can.  I think it's less

19 than two weeks.  We don't have to pick a jury, and there's a

20 lot of time that gets saved by virtue of not having the jury

21 present, but I do think that we're looking at more than one

22 week.

23         THE COURT:  Okay.  I assumed as such.  With respect

24 to your case, do you think three days, four days?

25         MS. WILKES:  Three to four days, Your Honor, yes.

1          THE COURT:  Okay.  In light of the fact that this

2    will not be a jury trial and in light of the fact that I

3    assumed your case was going to take more than two to three

4    days, we will not -- I have to leave town on the 26th, Friday,

5    the 26th.  So we will not have trial on Friday, the 26th.  We

6    will also break early on Thursday, the 25th.  I have -- I'm in

7    charge of drug court, and that meets at 3:30 on that Thursday.

8    Well, 3 o'clock.  3 o'clock on that Thursday.  So we will end

9    at 3 o'clock on the 25th.

10         Otherwise, though -- so we'll essentially,

11   essentially go four days the week of the 22nd, and then into

12   the week of the 29th to the extent it's necessary.  Have I

13   misstated something?

14         (The Court conferred privately with court staff at

15   the bench.)

16         THE COURT:  I'm trying to juggle a number of

17   different hearings, and we have another hearing that I'll

18   probably just move.  So that will essentially be the schedule.

19         That's all the issues that I wanted to talk to the

20   parties about.  I feel bad, I know that you've flown in from

21   long distances and got here bright and early on a cold and

22   rainy morning.

23         So do the parties have any questions of me or any

24   other either legal issues that you'd like to raise, or

25   logistical issues, should we have a trial in this case?  Ms.

1  Wilkes?

2          MS. WILKES:  Yes, Your Honor, as a matter of fact,

3  we do.

4          At the outset, in view of the important

5  jurisdictional question that's before the Court, we don't want

6  the Court to rush to judgment and would like for the Court to

7  have as much time as it needs, of course, to decide the issue.

8  We would ask that the Court continue the trial briefly until

9  the Court has time to consider the issue.

10         As I'm sure the Court can appreciate, every single

11 day now that goes by, we're at a substantial hardship,

12 essentially, on the parties preparing for trial.  And we're now

13 at a point where that it's getting so, so, so, so close that we

14 don't have five minutes, really, to do anything other than

15 prepare for trial.  But the Court needs the time to deal with

16 the issue, and we understand that.

17         In view of the fact that it's no longer a jury

18 trial, in view of the fact that the case is now in Kansas City,

19 and in view of the fact that the Court's schedule next week, or

20 the week of trial already doesn't permit for five consecutive

21 trial days, we think that a brief continuance would not work

22 any prejudice really on anybody, and, on balance, would

23 probably benefit everyone.

24         THE COURT:  Mr. Plevan?

25         MR. PLEVAN:  We would have a real problem with that,

1   Your Honor.  In addition to other commitments, the -- I mean,

2   go figure, Your Honor.  So the following Monday starts the one

3   major annual event in Las Vegas in which I'm told, you know,

4   somewhere between millions and billions of dollars in the

5   industry business is written.  This is the event in which all

6   manufacturers, suppliers, buyers, retailers come together, and

7   they have booths and they go and they sit down.  And so our

8   entire merchandising team every year goes, because that's where

9   they do business, and there's even testimony in the record

10  about some of the conversations that went back and forth

11  between Bearing Tech and Federal-Mogul happened.

12          So we really need to get our -- once we have our

13  executives testify, well, frankly, you know, the experts will

14  come when we ask them to.

15          MS. WILKES:  Your Honor, if I may be heard on that.

16          THE COURT:  Sure.

17          MS. WILKES:  That's -- we have to go to that trade

18  show, as well, and that would be the week that our witnesses

19  have to testify.

20          THE COURT:  Right.  Oh, the second week, meaning --

21          MS. WILKES:  Yes, Your Honor.

22          THE COURT:  -- the week of the 29th?

23          MS. WILKES:  Yes, Your Honor.

24          THE COURT:  Here is the problem is that my schedule

25  really doesn't get any better than it is right now.  If we're

1  looking for a six- to seven-day period that we would be

2  uninterrupted, we're looking into 2020, maybe the end of 2018.

3  So it really -- my schedule isn't going to get any better than

4  it is right now.  And while I'm not prepared to make a ruling

5  on the -- from the bench right now, we, meaning me and my law

6  clerks, have pretty thoroughly reviewed this issue, and I'm not

7  confident that additional time would help inform any decision

8  that I need to make.

9           So for those reasons, I'm not inclined to continue

10  the trial.  I need to put a little bit more thought into it,

11  but I will be ready to make a ruling, and, to the extent it

12  denies your motion, I do believe it's appropriate to move

13  forward with the trial as currently scheduled.

14           MS. WILKES:  If I may, then, Your Honor, in view of

15  the Court's scheduling on the 25th and the 26th, Bearing Tech

16  is going to be at a substantial hardship in its ability to put

17  on live witnesses and testimony because of the importance of

18  that trade show in the industry and the timing.

19           THE COURT:  Well, I mean, I can --

20           MR. PLEVAN:  Your Honor, may I make a comment on

21  that?

22           THE COURT:  Yes.

23           MR. PLEVAN:  We would be amenable to -- if the Court

24  is willing and counsel agrees, we can -- as I understand their

25  witness list, they have two executives who are going to testify

1   live.  We can put our executives on, they can put theirs on,

2   we'll get our experts in when the Court has time to see them,

3   whether it's the next week or the week after.  So we can

4   accommodate that problem.

5           THE COURT:  I do think, especially given the fact

6   that this is a bench trial, taking testimony out of order isn't

7   a problem.  I can obviously differentiate.  Unlike sometimes I

8   have concerns that a jury may get confused, I'll be able to

9   differentiate those two.  And to the extent that you can make

10  additional evidence as to how that can't be accommodated on the

11  26th, I could change my travel plans if necessary.  I do

12  believe that it's important to get this case resolved and be --

13  get moving forward or upward to the Eighth Circuit, as the case

14  may be.

15          MS. WILKES:  Thank you, Your Honor.  We do, as well,

16  so we appreciate counsel's willingness and the Court's

17  flexibility.

18          THE COURT:  Any other issues that I can take up at

19  this time?

20          MS. WILKES:  We have a couple that deal more with

21  procedure than anything else in terms of --

22          THE COURT:  Sure.

23          MS. WILKES:  -- the Court's order didn't set out

24  when the Court wanted to be heard on exhibits and filing of

25  objections to any of the exhibit lists, objections to witness

1  lists, the time for exchange of various witness information,

2  will call, those sorts of things.  And so I don't know if the

3  Court has a preference on that.

4         THE COURT:  I don't.  If the parties are prepared to

5  discuss that issue, any issues with respect to witnesses or

6  exhibits now, I can take them up now.  To the extent that the

7  parties aren't prepared, then the morning of trial I'm willing

8  to take those up.  Given the fact that this isn't a jury trial,

9  I'm not as concerned about taking those issues up before we

10  seat a jury and, therefore, ensure that we don't waste the

11  jury's time.

12         So with respect to exhibits, unless it causes some

13  hardship to not know what exhibit is coming in, I would suggest

14  we take those up at the time.  If there are objections to the

15  complete testimony of a witness and, therefore, the person

16  wouldn't have to come in, I'm willing to take those issues up

17  at any point that it works best for the parties.

18         MS. WILKES:  Thank you, Your Honor.  In terms of

19  timing for the parties to share their witness lists --

20         THE COURT:  I believe that it's helpful for everyone

21  to do that as early as possible.  At a minimum, I do ask that

22  the parties exchange the witnesses that they will call the

23  night before they're going to call those particular witnesses

24  so that the parties have the opportunity to know what witnesses

25  they need to prepare for for the following day.  But to the

1   extent the parties can work together and share that information

2   earlier, I highly encourage that.

3          MS. WILKES:  Certainly, Your Honor.  And then with

4   respect to exhibits, does the Court have a preference in terms

5   of how defendant would sticker their trial exhibits versus how

6   the plaintiff has stickered their trial exhibits?  Now that the

7   jury issue is removed, I understand it's much more simple.  But

8   to the extent the Court has a preference there, we want to make

9   sure that --

10          THE COURT:  I don't have a preference.  I think

11  every case is different, and whatever system works best for the

12  parties in this particular case will work for us.

13          MS. WILKES:  The parties have stipulated to the

14  admissibility of a fair number of the trial exhibits in this

15  case.  Would the Court entertain a motion at the -- prior to

16  the proceedings to admit all of those exhibits at the

17  beginning?

18          THE COURT:  Yes.  Yes, and I also highly encourage

19  that too.  To the extent we can avoid the need go through the

20  foundation laid necessary to admit exhibits and thereby save

21  time, I'm a big fan.

22          MS. WILKES:  That was our thought process.

23          MR. PLEVAN:  Your Honor, I'm not sure we've fully

24  stipulated to the admissibility.  The Court's direction was to

25  clear up all foundation issues, and I think we have done that.

1  We threw in some additional objections, but there's the issue

2  of some exhibits clearly could be admissible for one purpose,

3  but not for another.  And so we're not necessarily prepared to

4  stipulate across the board for that reason.

5          THE COURT:  Okay.  To the extent you can stipulate

6  across the board or you can stipulate for a limited purpose,

7  again, I think that speeds things up and would ask that the

8  parties do so.

9          MS. WILKES:  Thank you, Your Honor.  We thought we

10 would just have the witnesses on the stand for less time --

11         THE COURT:  Right.

12         MS. WILKES:  -- if we didn't have to go through some

13 of those formalities that might otherwise be necessary.

14         Although Ms. Sooter is fantastic and very talented

15 and very qualified, we would ask under Local Rule 83.5(h)(5)

16 that we have permission to proceed, should the matter go to

17 trial, without the presence of our local counsel in this case

18 under the local rules.

19         THE COURT:  I don't have a problem with that.  Do

20 you have any objection to that?

21         MR. PLEVAN:  No, Your Honor.

22         THE COURT:  No, that's not a problem.

23         MS. WILKES:  And one last thing on my to-do list,

24 Your Honor, if you don't mind.  How long would the Court like

25 for us to spend with an opening statement?

1          THE COURT:  I think, given the facts of this case,

2    it's not necessary -- or given the history, not the facts.

3    Given the history of this case, the one good thing about having

4    gotten the case late and made -- kind of rolled up my sleeves

5    and dug into it in a short period of time is that it's all very

6    fresh in my mind.  It's not that I made a decision nine months

7    ago and I need to refresh my memory.

8          So, given the history of the case and the fact that

9    I'm fairly aware of the facts, I don't think that a significant

10   opening statement is necessary and probably not a good use of

11   time.

12         MS. WILKES:  Thank you, Your Honor.

13         THE COURT:  Anything else?

14         MR. PLEVAN:  Yes, Your Honor.  What will the Court's

15   hours be in terms of what will you see the normal day?

16         THE COURT:  Depending upon whether or not, you know,

17   we can save some time, I would typically start at 9:00 and end

18   at 5:00, take a morning recess, take a lunch recess.  I have a

19   number of criminal proceedings that are set during the lunch

20   hour, so I will be taking probably a 45 to hour break at lunch

21   on most days in order to accommodate the criminal proceedings.

22   And then end at 5:00.

23         If the parties think that we can save some time and

24   knock off a period of time, I'm open to starting as early as

25   8:00 or 8:30.  I would prefer not to go past 9:30 because of

1  security in the courthouse, and we have to have additional

2  security if we go past 5:30.  So that would be the general

3  parameters.  Again, if the parties think that we can get

4  through a lot more if we start a little earlier and go a little

5  later, I'm most certainly open to that suggestion.

6          MR. PLEVAN:  Thank you, Judge.

7          MR. SMITH:  Judge, do you have a preference on paper

8  exhibits?  Do you want them, not want them?

9          THE COURT:  It kind of depends upon how many there

10 are.  And I think that there are quite a few in this case.  So

11 I probably don't need binders of all of the paper exhibits;

12 however, to the extent the parties think that it would be

13 helpful as you're going through the testimony to have me able

14 to quickly review the exhibits, I'm open to that.

15         So that's a long way of saying I really don't have a

16 preference, and whatever the parties think would help get the

17 evidence in front of me, I'm willing to take that approach.

18         MS. WILKES:  I assume, Your Honor, the setup at the

19 podium allows us to electronically share information?

20         THE COURT:  It does, yes.  Most certainly meet with

21 the IT department ahead of time, but it permits you to not only

22 electronically share, you can share via iPad, Elmo, it has an

23 Elmo through a flash drive.  The witnesses can mark on the

24 screen, the exhibit can then be saved with the markings.  It

25 has a lot of capabilities, only some of which I am familiar

1  with.  But it's a relatively new system.  We've only had it

2  there for three to six months, I would say.  So meet with IT,

3  and it has a lot of capabilities.

4          MS. WILKES:  Thank you.

5          THE COURT:  Nothing further?

6          MS. WILKES:  No, Your Honor.

7          THE COURT:  Again, I appreciate for such a short

8  proceeding the extensive travel that everyone did to get here.

9  I will enter a ruling in short order on the jurisdictional

10  issue, and we can go from there.

11          So if there's nothing further, then have a good

12  afternoon and a good weekend.

13          (Hearing adjourned.)

14                      - - -

15                      - - -

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE</u>

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

October 15, 2018

/s/_____
Kathleen M. Wirt, RDR, CRR
U.S. Court Reporter